*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LADONNA WHITE,

        Plaintiff-Appellant,

v

JOSHUA WHITE,

        Defendant-Appellee.

UNPUBLISHED
February 25, 2026
11:17 AM

No. 369938
Wayne Circuit Court
LC No. 22-101815-DM

Before: GADOLA, C.J., and CAMERON and RICK, JJ.

PER CURIAM.

Plaintiff, LaDonna White, appeals as of right the January 10, 2024 judgment of divorce. Plaintiff argues the trial court erred when it imputed income to her for purposes of calculating child support, which also affected the division of the marital estate and the trial court's decision to deny spousal support and attorney fees. The judgment also awarded defendant, Joshua White, unsupervised parenting time with the parties' minor children, which plaintiff argues was not in the children's best interests. We vacate in part and remand for further proceedings.

## I. FACTS

The parties were married in 2006, and had two children during the marriage, JW and CW. Plaintiff was a teacher for Detroit Public Schools (DPS), and defendant worked in real estate. Before the marriage, plaintiff owned a condominium in Southfield, Michigan, where the parties lived for a period of time before moving into their marital home in Dearborn. The parties then used the condominium as a rental property during the marriage. In 2012, defendant began working for Cinnaire Corporation, earning about $100,000 a year. In 2008, plaintiff was laid off and did not work again until 2010, when she was hired as a literacy coach for DPS. Plaintiff worked full-time in that role until the position was eliminated in 2018. Since then, plaintiff worked various part-time jobs. The parties dispute whether they agreed it was best for plaintiff to work part-time.

Tensions between the parties arose because of their finances and disagreements about parenting. Credit card debt accumulated, and defendant took out a home equity line of credit ("HELOC"). In August 2021, defendant blocked plaintiff's access to one of the parties' joint bank accounts. After an argument between the parties in January 2022, plaintiff and the minor children

moved out of the home and into a hotel, which was paid for by a family member. In February 2022, plaintiff filed for divorce. The children remained in plaintiff's care throughout the proceedings, and they eventually returned to the marital home after defendant moved out. Defendant was granted supervised parenting time. Plaintiff worked part-time during the proceedings, and obtained loans from family members to pay her attorney fees and living expenses. Defendant, who filed bankruptcy in 2022, continued to pay some of the household expenses for the marital home. Defendant was not required to pay interim child support until April 2023. During the proceedings, defendant's father died and defendant received $250,000 from the Prudential life insurance policy. Defendant used the funds to buy a truck and a house in Detroit.

The bench trial commenced in March 2023 and continued over three dates. Plaintiff accused defendant of verbal, emotional, and financial abuse during the marriage. Plaintiff also alleged defendant physically, verbally, and emotionally abused CW. JW was witness to defendant's abusive behavior to plaintiff and CW, which impacted JW. According to defendant, he merely used corporal punishment, and CW was often disrespectful. The parties testified about their income, debts, marital assets, and premarital assets. It was undisputed defendant was the breadwinner during the marriage, and plaintiff struggled financially after the parties separated. Plaintiff, who wanted to continue to live in the marital home with the children, testified she required spousal support, child support, and attorney fees. Plaintiff requested defendant have supervised parenting time. Defendant requested unsupervised parenting time and joint legal and physical custody.

On January 10, 2024, the trial court entered the judgment of divorce. The trial court divided the marital estate, denied plaintiff's requests for attorney fees and spousal support, and imputed income to plaintiff for purposes of calculating child support. The trial court awarded plaintiff the condominium and the marital home and any equity in those properties. However, plaintiff was held responsible for the mortgages on both properties and the HELOC. Plaintiff was ordered to refinance the mortgage on the marital home within 90 days and have defendant's name removed from the mortgage. Defendant was awarded the Detroit home he bought during the proceedings and other assets. Plaintiff was awarded half of the Prudential life insurance proceeds. Defendant was awarded unsupervised parenting time with the children, but no overnight parenting time until the completion of reunification therapy. Plaintiff now appeals.

## II. CHILD SUPPORT

Plaintiff argues the trial court abused its discretion when it imputed income to her and awarded defendant a child-tax exemption despite defendant having no overnight parenting time. We agree.

## A. STANDARDS OF REVIEW

A trial court must follow the Michigan Child Support Formula (MCSF) when determining child support obligations. *Ewald v Ewald*, 292 Mich App 706, 714; 810 NW2d 396 (2011), citing MCL 552.605. "This Court reviews de novo as a question of law whether the trial court has properly applied the MCSF." *Id.* "The trial court's factual findings underlying its determination regarding child support are reviewed for clear error." *Id.* A finding is clearly erroneous if, after reviewing the entire record, this Court is left with the definite and firm conviction that a mistake

was made. *Loutts v Loutts*, 298 Mich App 21, 26; 826 NW2d 152 (2012). "The trial court's discretionary rulings permitted by statute and the MCSF are reviewed for an abuse of that discretion." *Ewald*, 292 Mich App at 714-715; 810 NW2d 396 (2011). This Court also reviews for an abuse of discretion a trial court's decision whether to impute income to a party. *Loutts*, 298 Mich App at 25-26. "An abuse of discretion occurs when the trial court's decision falls outside the range of principled outcomes." *Id*. at 26.

## B. ANALYSIS

The trial court abused its discretion when it imputed income to plaintiff without following the requirements of the MCSF[1] and MCL 552.605(2). "Except as otherwise provided in this section, the court shall order child support in an amount determined by the child support formula…." MCL 552.605(2). The statute goes on to provide:

> The trial court may enter an order that deviates from the formula if the court determines from the facts of the case that application of the child support formula would be unjust or inappropriate and sets forth in writing or on the record all of the following:
>
> > (a) The child support amount determined by application of the child support formula.
> >
> > (b) How the child support order deviates from the child support formula.
> >
> > (c) The value of property or other support awarded instead of the payment of child support, if applicable.
> >
> > (d) The reasons why application of the child support formula would be unjust or inappropriate in the case. [*Id*.]

The first step in determining each parent's support obligation is to determine both parents' individual incomes. 2021 MCSF 2.00. Accordingly, "[a] trial court has the discretion to impute income when a parent voluntarily reduces or eliminates income or when it finds that the parent has a voluntarily unexercised ability to earn." *Carlson v Carlson*, 293 Mich App 203, 205-206; 809 NW2d 612 (2011) (quotation marks and citation omitted). "However, a court's decision to impute income must be supported by adequate fact-finding that the parent has an actual ability and likelihood of earning the imputed income." *Id*. at 206 (quotation marks and citation omitted). The trial court must first find that the parent is "voluntarily unemployed, underemployed, or has an unexercised ability to earn." *Clarke v Clarke*, 297 Mich App 172, 183; 823 NW2d 318 (2012). 2021 Then, the MCSF instructs that the trial court consider several factors to determine whether the parent has an actual ability to earn and a reasonable likelihood of earning the potential income. *Id*.; MCSF 2.01(G)(2).

---

[1] This opinion references the 2021 version of the MCSF because that was the version in effect when the trial court issued the judgment of divorce in January 2024.

-3-

Evidence was presented at trial concerning plaintiff's employment history, educational background, and ability to earn income. Plaintiff worked full-time as a school teacher and literacy coach at the beginning of the parties' marriage. However, plaintiff testified she only worked part-time after 2018 because she needed to care for the children and the household. According to defendant, plaintiff refused to work full-time despite his requests. Plaintiff testified that she makes $30 per hour at her current job and the hours vary between 10 and 20 hours per week. The trial court used defendant's actual income for the child support calculation. But the trial court imputed income to plaintiff of $30 an hour for 40 hours per week based on plaintiff's testimony "that she makes $30 per hour." The MCSF requires the parties' actual net incomes be used to calculate the support obligation. 2021 MCSF 2.01(A). The trial court did not state on the record or in writing, pursuant to MCL 552.605(2), the child support amount determined by application of the child support formula or the reasons why application of the formula would be unjust or inappropriate in the case. The trial court also failed to consult the factors listed in 2021 MCSF 2.01(G) to determine whether plaintiff had an actual ability to earn and a reasonable likelihood of earning the potential income imputed to her.

Plaintiff also challenges the trial court's decision to grant defendant the federal and state income tax exemption for one of the minor children. "[I]t is within the general authority of the trial court to award the federal income tax dependency exemption for the minor children to either party." *Fear v Rogers*, 207 Mich App 642, 645; 526 NW2d 197 (1994). "[T]he income tax dependency exemption is closely associated with issues involving child support. . . ." *Id*. at 645-646. "[T]he appropriate allocation of the income tax dependency exemption can increase the total disposable income available to the parties and, therefore, can be factored into an increased child support award." *Id*. at 646.

In this case, the trial court held plaintiff was entitled to claim CW as a dependent for purposes of federal and state income tax exemptions, and defendant was entitled to claim JW as a dependent. "When only one minor child" remained, the parties were ordered to "alternate the deduction." However, as noted by plaintiff, defendant was not awarded overnight parenting time. The MCSF presumes the parent "with whom the child resides for the majority of a calendar year claims the dependent tax exemption for that child." 2021 MCSF 2.07(B)(3). The record does not indicate that the trial court considered the MCSF when it awarded defendant a dependent tax deduction. A trial court must follow the MCSF when determining child support obligations. *Ewald*, 292 Mich App at 714; citing MCL 552.605. Because the allocation of the income tax deduction can increase the disposable income available to the party claiming the deduction, it ultimately affects the determination of child support. See *Fear*, 207 Mich App at 645-646. The trial court abused its discretion in allocating the dependent tax deduction without consulting the MCSF. The trial court thus abused its discretion. See *Loutts*, 298 Mich App at 25-26.

In sum, because the trial court did not properly apply the MCSF in calculating child support, we vacate the child-support order and remand for recalculation. On remand, the trial court must recalculate plaintiff's income consistent with the MCSF and consider the presumption in 2021 MCSF 2.07(B)(3) concerning the tax credits. The trial court may deviate from the MCSF should it conclude that application of the MCSF would be unjust or inappropriate under the facts of this case, but it must satisfy the requirements of MCL 552.605(2)(a) through (d).

## III. DIVISION OF THE MARITAL ESTATE

Plaintiff argues the trial court's division of the marital estate was wholly inequitable because it heavily favored defendant and left plaintiff in a position of need. We conclude it is necessary to vacate the trial court's division of the marital estate because the trial court did not differentiate between marital and separate property, and it did not attempt to ascertain the value of the property.

## A. STANDARDS OF REVIEW

We review for clear error a trial court's factual findings related to the division of marital property in a divorce. *Cunningham v Cunningham*, 289 Mich App 195, 200; 795 NW2d 826 (2010). "[A] trial court's findings of fact regarding whether a particular asset qualifies as marital or separate property" are also reviewed for clear error. *Woodington v Shokoohi*, 288 Mich App 352, 357; 792 NW2d 63 (2010). Questions of law are reviewed de novo. *Cunningham*, 289 Mich App at 200.

## B. ANALYSIS

We conclude it is necessary to vacate the portion of the judgment of divorce concerning the division of the marital estate and remand for further proceedings. As explained above, it is necessary to vacate the trial court's child-support award because the trial court failed to fully comply with the requirements of the MCSF when calculating plaintiff's income for purposes of child support. Because the recalculation of plaintiff's income may affect the trial court's determination concerning the property division, we also vacate the portion of the judgment of divorce dividing the marital estate.

"The goal in distributing marital assets in a divorce proceeding is to reach an equitable distribution of property in light of all the circumstances." *Gates v Gates*, 256 Mich App 420, 423; 664 NW2d 231 (2003). When dividing the marital estate,

> the following factors are to be considered wherever they are relevant to the circumstances of the particular case: (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. There may even be additional factors that are relevant to a particular case. For example, the court may choose to consider the interruption of the personal career or education of either party. The determination of relevant factors will vary depending on the facts and circumstances of the case. [*Sparks v Sparks*, 440 Mich 141, 159-160; 485 NW2d 893 (1992) (citation omitted).]

"The trial court must consider all relevant factors but not assign disproportionate weight to any one circumstance." *Berger v Berger*, 277 Mich App 700, 717; 747 NW2d 336 (2008) (quotation marks and citation omitted). "The trial court is given broad discretion in fashioning its rulings and there can be no strict mathematical formulations." *Sparks*, 440 Mich at 158-159.

In reaching an equitable division, the trial court must first determine what property is considered marital property and what property is considered separate property. *Cunningham*, 289 Mich App at 200.

> Generally, marital property is that which is acquired or earned during the marriage, whereas separate property is that which is obtained or earned before the marriage. Once a court has determined what property is marital, the whole of which constitutes the marital estate, only then may it apportion the marital estate between the parties in a manner that is equitable in light of all the circumstances. As a general principle, when the marital estate is divided each party takes away from the marriage that party's own separate estate with no invasion by the other party. [*Cunningham*, 289 Mich App at 201-202 (quotation marks and citations omitted).]

"In granting a divorce judgment, the trial court must make findings of fact and dispositional rulings." *Reed v Reed*, 265 Mich App 131, 150; 693 NW2d 825 (2005). "The trial court's disposition of marital property is intimately related to its findings of fact." *McNamara v Horner*, 249 Mich App 177, 188; 642 NW2d 385 (2002). "As a prelude to [] property division, a trial court must first make specific findings regarding the value of the property being awarded in the judgment." *Olson v Olson*, 256 Mich App 619, 627; 671 NW2d 64 (2003). MCR 2.517(A)(1) states, "[i]n actions tried on the facts without a jury or with an advisory jury, the court shall find the facts specially, state separately its conclusions of law, and direct entry of the appropriate judgment." "Brief, definite, and pertinent findings and conclusions on the contested matters are sufficient, without over elaboration of detail or particularization of facts." MCR 2.517(A)(2). "The court may state the findings and conclusions on the record or include them in a written opinion." MCR 2.517(A)(3).

In this case, the trial court erroneously failed to consider what property was marital and what property was separate. See *Cunningham*, 289 Mich App at 200. The trial court also failed to make specific findings regarding the value of property being divided, which is required. See *Olson*, 256 Mich App at 627. The judgment of divorce, which was entered after the trial court's ruling from the bench, did not contain any relevant information as to what the trial court found: (1) constituted marital, or separate, property; or (2) the value of the property. "If this Court upholds the trial court's findings of fact, it must then decide whether the dispositional ruling was fair and equitable in light of those facts." *Reed*, 265 Mich App at 150. When considering the trial court's lack of analysis, it is unclear if the division of assets and debts was fair or equitable.

The trial court (1) acknowledged the parties had been married for 17 years; (2) made findings concerning the parties' past employment and ability to work; (3) stated it considered the parties' ages; (4) found both parties were at fault for the dissolution of the marriage; and (5) stated it considered the general principles of equity. Notably, the trial court found plaintiff contributed "very little" monetarily to the marital estate, but the court failed to consider testimony plaintiff worked part-time so she could care for the children and maintain the household. The fact that plaintiff did not significantly contribute monetarily to the marital estate is not necessarily dispositive. See *Hanaway v Hanaway*, 208 Mich App 278, 292-294; 527 NW2d 792 (1995) (holding the wife was entitled to an equitable portion of the husband's business where the husband's "investment of time and effort in maintaining and increasing the business" "was facilitated by [the wife's] long-term commitment to remain at home to run the household and care

for the children"). The trial court failed to make findings of fact essential to a proper resolution of whether the division of the marital estate was equitable.

Because the recalculation of plaintiff's income for calculating child support may affect the trial court's determination concerning the property division, we also vacate the portion of the judgment of divorce dividing the marital estate. Furthermore, the trial court clearly erred in failing to make factual findings on what it considered separate property and marital property, and what the value of the marital property was. On remand, the trial court must first decide what is separate property, and what is marital property. The trial court must place valuations on the parties' assets and debts, and consider the relevant factors in *Sparks*, 440 Mich at 159-160, in fashioning an equitable division.

## IV. SPOUSAL SUPPORT

Plaintiff next argues the trial court's decision not to award her spousal support was fundamentally inequitable.

## A. STANDARDS OF REVIEW

We review a trial court's decision concerning spousal support for an abuse of discretion. *Loutts*, 298 Mich App at 25.

> The object in awarding spousal support is to balance the incomes and needs of the parties so that neither will be impoverished; spousal support is to be based on what is just and reasonable under the circumstances of the case. We review for clear error the trial court's factual findings regarding spousal support. A finding is clearly erroneous if, after reviewing the entire record, we are left with the definite and firm conviction that a mistake was made. If the trial court's findings are not clearly erroneous, we must determine whether the dispositional ruling was fair and equitable under the circumstances of the case. We must affirm the trial court's dispositional ruling unless we are convinced that it was inequitable. [*Id*. at 25-26 (quotation marks and citations omitted).]

## B. ANALYSIS

The Legislature has authorized trial courts to order spousal support "if the estate and effects awarded to either party are insufficient for the suitable support and maintenance of either party. . . ." MCL 552.23(1). "Spousal support does not follow a strict formula[,]" but requires consideration of what is just and reasonable under the circumstances of the case. *Loutts*, 298 Mich App at 30.

> Among the factors that a court should consider are (1) the past relations and conduct of the parties; (2) the length of the marriage; (3) the abilities of the parties to work; (4) the source and the amount of property awarded to the parties; (5) the parties' ages; (6) the abilities of the parties to pay support; (7) the present situation of the parties; (8) the needs of the parties; (9) the parties' health; (10) the parties' prior standard of living and whether either is responsible for the support of others; (11) the contributions of the parties to the joint estate; (12) a party's fault in causing

the divorce; (13) the effect of cohabitation on a party's financial status; and (14) general principles of equity. [*Woodington*, 288 Mich App at 356.]

"The trial court should make specific factual findings regarding the factors that are relevant to the particular case." *Loutts*, 298 Mich App at 32 (quotation marks and citation omitted). "The objective of spousal support is to balance the incomes and needs of the parties in a way that will not impoverish either party, and support is to be based on what is just and reasonable under the circumstances of the case." *Woodington*, 288 Mich App at 356. "If a court finds that a party has voluntarily reduced the party's income, the court may impute additional income in order to arrive at an appropriate alimony award." *Cassidy v Cassidy*, 318 Mich App 463, 475; 899 NW2d 65 (2017) (quotation marks and citation omitted).

The trial court found neither party was entitled to spousal support. The trial court stated, "So in lieu of spousal support[,] [plaintiff] will receive $1,000 a month to make her whole for one half—of the proceeds of the Prudential account." The trial court's comments establish the court took the life insurance payments, and the overall division of the marital estate, into consideration when it determined if plaintiff was entitled to spousal support. However, as already stated above, the trial court failed to make findings of fact essential to a proper resolution of whether the property division was equitable. Because "the alimony award goes hand in glove with the property distribution," *Magee v Magee*, 218 Mich App 158, 165-166; 553 NW2d 363 (1996) (quotation marks and citation omitted), and because the trial court awarded plaintiff $125,000 in lieu of spousal support, it is necessary to grant the trial court the latitude to revisit the question of spousal support on remand after it revises the property distribution in accordance with equitable principles.

Additionally, as already stated, the trial court failed to fully comply with the requirements of the MCSF when calculating plaintiff's income for purposes of child support. While the trial court did not expressly incorporate its decision concerning plaintiff's actual and imputed income into its decision regarding spousal support, the trial court noted plaintiff did not work full-time in the years leading up to the divorce proceedings. The trial court also noted defendant's testimony plaintiff could have worked full-time, but did not do so. Because the recalculation of plaintiff's income might affect the trial court's determination concerning any award of spousal support, we vacate the trial court's holding plaintiff is not entitled to spousal support. On remand, the trial court must revisit the issue of spousal support in light of its decisions regarding division of the marital estate and income in relation to child support.

## V. ATTORNEY FEES

Plaintiff next argues the trial court erred when it denied her request for attorney fees under MCR 3.206(D).

## A. STANDARDS OF REVIEW

This Court reviews a trial court's decision to grant or deny attorney fees in a divorce action for an abuse of discretion. *Richards v Richards*, 310 Mich App 683, 699; 874 NW2d 704 (2015). "However, findings of fact on which the trial court bases an award of attorney fees are reviewed for clear error." *Id*. at 700.

## B. ANALYSIS

"Under the 'American rule,' attorney fees are not recoverable as an element of costs or damages unless expressly allowed by statute, court rule, common-law exception, or contract." *Reed*, 265 Mich App at 164. "In domestic relations cases, attorney fees are authorized by both statute, MCL 552.13, and court rule, MCR 3.206[(D)]." *Reed*, 265 Mich App at 164. However, attorney fees are not recoverable as of right. *Id*. The party requesting attorney fees bears the burden of proof. *Safdar v Aziz*, 327 Mich App 252, 271; 933 NW2d 708 (2019).

Plaintiff argued she was entitled to attorney fees under MCR 3.206(D)(2)(a), which has been interpreted to require an award of attorney fees "only as necessary to enable a party to prosecute or defend a suit." *Myland v Myland*, 290 Mich App 691, 702; 804 NW2d 124 (2010) (quotation marks and citation omitted). If a party requests attorney fees and expenses under MCR 3.206(D)(2)(a), he or she "must allege facts sufficient to show that he or she is unable to bear the expense of the action, and that the other party is able to pay." *Colen v Colen*, 331 Mich App 295, 306; 952 NW2d 558 (2020) (quotation marks and citation omitted). "Accordingly, . . . the analytical focus is on the financial status of each party in relation to the attorney fees. . . ." *Id*. at 307. "This requires a trial court to give special consideration to the specific financial situations of the parties and the equities involved." *Id*. at 308. "[A] party sufficiently demonstrates an inability to pay attorney fees when that party's yearly income is less than the amount owed in attorney fees." *Myland*, 290 Mich App at 702. "[A] party may not be required to invade her assets to satisfy attorney fees when she is relying on the same assets for her support." *Id*. (quotation marks and citation omitted).

Despite ample record evidence, the trial court failed to make any findings concerning the parties' ability to pay attorney fees. Additionally, for the reasons already discussed, it is necessary to vacate the trial court's division of the marital estate, denial of spousal support, and calculation of plaintiff's income for purposes of child support. Because the trial court's decisions on these issues on remand may impact its decision concerning attorney fees, we also vacate the trial court's holding plaintiff is not entitled to attorney fees and remand for further findings of fact and a new disposition, if warranted. On remand, the trial court shall revisit the attorney-fee decision after plaintiff's income is recalculated and the issues of spousal support and property division are settled. When considering whether plaintiff is entitled to attorney fees, the trial court must "give special consideration to the specific financial situations of the parties and the equities involved." See *Loutts*, 309 Mich App at 218 (quotation marks and citation omitted).

## VI. PARENTING TIME

Plaintiff next argues the trial court improperly awarded defendant unsupervised parenting time, which was contrary to the children's best interests. However, since the entry of the judgment of divorce, and plaintiff's filing of her claim of appeal, the trial court has modified defendant's parenting-time award.[2]  Indeed, as of August 14, 2024, a guardian ad litem was appointed,

---

[2] The trial court was authorized to enter orders concerning parenting time, despite plaintiff's pending appeal, "as the circumstances of the parents and the benefit of the children require[d]."

defendant was ordered to participate in an anger management program, the children and defendant were engaged in reunification therapy, and defendant's parenting time with CW did not occur outside of therapy. Defendant had limited parenting time with JW outside of therapy.

Because the parenting-time award that is subject to this appeal has been modified, ruling on whether the trial court failed to consider the children's best interests when entering the January 10, 2024 judgment will have no practical effect. The parenting-time issue is therefore moot, and we decline to consider the claims of error. See *Barretta v Zhitkov*, 348 Mich App 539, 561; 19 NW3d 420 (2023). Indeed, reviewing the issue "would be a purposeless proceeding," and this Court exists to decide actual cases and controversies. *Id*. at 561-562.

## VII. CONCLUSION

We vacate the trial court's decisions concerning: (1) child support; (2) the division of the marital estate; (3) spousal support; and (4) attorney fees. The parenting time issue is moot. We remand for further proceedings consistent with this opinion. In all other respects, the trial court's judgment is affirmed. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Thomas C. Cameron
/s/ Michelle M. Rick

---

*Lemmen v Lemmen*, 481 Mich 164, 166-167; 749 NW2d 255 (2008), quoting MCL 552.17(1). See also MCR 7.208(A)(4).